# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOAN LYNCH,
        Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

Case No. 1:12-cv-075
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in

opposition (Doc. 15), and plaintiff's reply memorandum. (Doc. 18).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in September 2002, alleging disability since

August 2002, due to endocarditis, aortic valve leak, blood clots, a broken left arm, heart

problems, mental illness, and depression. Plaintiff's applications were denied initially and on

reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before

administrative law judge (ALJ) Melvin A. Padilla. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing held on August 11, 2005. (Tr. 753-88). On May 12,

2006, the ALJ issued a decision denying plaintiff's DIB and SSI applications. (Tr. 539-55).

Plaintiff's request for review by the Appeals Council was granted based on new and material

evidence, and the matter was remanded for further proceedings. A second hearing was held

before ALJ Padilla on June 13, 2007.  (Tr. 779-811).  Plaintiff appeared at the hearing with counsel, a VE appeared and testified, and a medical expert (ME), Dr. Mary Buban, Ph.D., a clinical psychologist, appeared by telephone and testified.  On August 22, 2007, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  (Tr. 15-28).  The Appeals Council denied review, making the decision of the ALJ the final administrative decision of the Commissioner.

Plaintiff appealed the decision of the Commissioner to the United States District Court. *See Lynch v. Commissioner*, No. 1:08-cv-453 (S.D. Ohio) (Weber, J.).  United States Magistrate Judge Timothy Hogan issued a report and recommendation that the decision of the Commissioner be reversed and remanded for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).  (Tr. 840-61).  The magistrate judge reviewed the evidence of record, including the reports and opinions of plaintiff's treating osteopathic physician specializing in neurology, Dr. Sharon Merryman, D.O.[1]; the mental status exams and opinions of plaintiff's treating psychiatrist, Dr. M.K. Mahajan, M.D.[2]; and the test results from Dr. James Gilchrist, Ph.D., a neuropsychologist to whom Dr. Merryman had referred plaintiff.  (Tr. 856-59).  The magistrate judge determined that ALJ Padilla had erred by relying on non-treating sources to

---

[1] Dr. Merryman completed a questionnaire in August 2005 concluding, among other findings, that plaintiff was not able to respond appropriately to supervision, co-workers and customary work pressure; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of her physical and mental impairments; sustain attention and concentration on her work to meet normal standards of work productivity and work accuracy; understand, remember, and carry out simple work instructions without requiring very close supervision; maintain concentration and attention for extended periods (approximately 2 hour segments); complete a normal work day and work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; or sustain an ordinary routine without special supervision.  (Tr. 517-25).  Dr. Merryman opined that plaintiff had marked restriction of daily activities; marked difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  (Tr. 525-26).

[2] Dr. Mahajan completed a September 2006 questionnaire in which he made most of the same findings regarding plaintiff's inability to attend, concentrate, keep pace and withstand stress as those made by Dr. Merryman.  (Tr. 574-582).  Dr. Mahajan opined that plaintiff had moderate restriction of daily activities; marked difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  (Tr. 582-83).

rebut the conclusions of Drs. Merryman and Mahajan concerning plaintiff's inability to attend and concentrate and to handle stress. (Tr. 859). However, the magistrate judge acknowledged that the evidence raised an issue as to whether plaintiff's drug abuse as disclosed by the evidence was a material and contributing factor to these limitations. (*Id.*). First, the magistrate judge noted that Dr. Mahajan's records did not indicate that plaintiff had ever discussed her problems with drug abuse, "which may have been a significant, if not the more significant, factor which led to her situational depression." (*Id.*). Second, the magistrate judge noted the need to clarify on remand the circumstances surrounding plaintiff's dismissal from a drug treatment program, Project Cure, in January 2007, as the dismissal may or may not permit an inference of a significant drug abuse problem at that time. The magistrate judge noted that plaintiff was dismissed from the program because she was registered with another methadone clinic at the same time. The magistrate judge found that if the record on remand showed plaintiff was actually obtaining methadone from two sources at the same time, the record would support the inference of a drug problem. However, if the record showed the dual registration was due to a misunderstanding or an administrative error, such an inference was not warranted. (*Id.*). Third, Judge Hogan noted that although plaintiff's history of cooperation with Project Cure was not ideal, she did have a number of negative drug screens. (*Id.*).

For these reasons, the magistrate judge determined that the issue of whether drug abuse was a contributing factor to plaintiff's limitations was left unanswered by the medical record in the case. He concluded: "After a thorough and complete review of all the evidence in this case, we find the ALJ's failure to accept the above two conclusions of the treating physicians, Merryman and Mahajan ['an inability to attend and concentrate, as well as an inability to

withstand stress'], to be erroneous, and recommend a REMAND to determine whether these two limitations . . . would not exist in the absence of Plaintiff's present or past drug abuse." (Tr. 859-60).

On September 1, 2009, the district judge issued an order adopting the report and recommendation of the magistrate judge. (Tr. 862). Upon remand, the Appeals Council vacated the final decision of the Commissioner pursuant to the Court's order and remanded the case to the ALJ for further proceedings consistent with the order. (Tr. 863-64).

A third ALJ hearing was held on April 26, 2010, before ALJ Thomas McNichols, II. (Tr. 1138-88). Plaintiff appeared with counsel and a VE appeared and testified. Dr. Buban again appeared by telephone and testified as a medical expert. ALJ McNichols issued a decision on May 26, 2010, denying plaintiff's DIB and SSI applications. (Tr. 822-36). The Appeals Council denied review, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

4

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements of the Social Security Act through September 30, 2007.

5

2. The [plaintiff] has not engaged in substantial gainful activity since August 18, 2002, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: residuals of finger tips on three fingers of the right hand; history of aortic insufficiency and residuals of aortic valve replacement; questionable history of seizure disorder; adjustment disorder with depressed mood; and polysubstance addiction disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: no climbing ropes/ladders/scaffolds; no greater than frequent balancing, bending, stooping, kneeling, crouching or crawling; no more than occasional handling or fingering with the right, dominant hand; use of the right hand is limited to assisting the left; no exposure to hazards; only simple, one- or two-step tasks requiring little, if any, concentration; low stress jobs with no production quotas and no fast-paced work; and no jobs in contact with drugs or alcohol as part of job duties.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1960 and was 41 years old on the alleged disability onset date and is now 49 and a "younger individual" (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The [plaintiff] does not have transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[3] Plaintiff's past relevant work was as a server/waitress, which was semi-skilled work performed at the light exertional level, and a factory production worker, which was unskilled light work. (Tr. 834).

10. Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).The ALJ relied on the VE's testimony to find that plaintiff would be able to perform at least 8,000 unskilled light jobs in the regional economy, giving as examples of such jobs packager and light cleaner, and 5,000 unskilled sedentary jobs in the regional economy, giving as examples of such jobs inspector and packager. (Tr. 835).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 18, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 828-36).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in rejecting the opinions of her treating

neurologist, Dr. Merryman, and treating psychiatrist, Dr. Mahajan; and (2) the ALJ erred in

finding that substance abuse was a contributing factor material to a finding of disability. As

explained below, the ALJ was required to credit the treating physicians' opinions pursuant to the

District Court's previous decision in this case and to determine the effect of plaintiff's substance

abuse on her disability.[4]

### 1. The ALJ erred by rejecting the treating physicians' opinions.

Plaintiff alleges that the ALJ erred by failing to give controlling weight to the opinions of

her treating neurologist, Dr. Merryman, and treating psychiatrist, Dr. Mahajan, and by instead

relying on the opinion of the ME, Dr. Buban, to find she is not disabled. The Commissioner

argues that the ALJ's evaluation of plaintiff's mental impairments is supported by substantial

evidence. The Commissioner contends that the ALJ gave valid reasons for declining to give Drs.

Merryman and Mahajan's opinions controlling weight.

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight. If a treating physician's "opinion on the issue(s) of the nature and severity of

[a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. Medical expert testimony consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision. *Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). "A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians." *Lyons v. Social Security Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001) (citing *Barker*, 40 F.3d at 794).

The Court finds that the ALJ's decision to reject the opinions of plaintiff's treating physicians is not supported by substantial evidence. The District Court determined in its prior decision that ALJ Padilla erred by relying on "non-treating sources to rebut" the conclusions of plaintiff's treating physicians regarding plaintiff's inability to handle stress, concentrate, attend and keep pace. (Tr. 859). The District Court framed the only question to be resolved on remand as whether "present or past drug abuse" was a contributing and material factor to plaintiff's disability resulting from these limitations. (Tr. 859-60). The ALJ appears to acknowledge that the only issue before him on remand was the impact of plaintiff's drug abuse on her disability resulting from these limitations as he states at the beginning of his decision: "Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to resolve the issue of whether [plaintiff's] limitations as assessed by treating sources would exist in the

---

[4] Plaintiff does not present any arguments pertaining to her physical impairments so that the Court will

absence of present or past drug abuse." (Tr. 825). The ALJ further acknowledged that the

District Court "at least intimated that [plaintiff] was disabled based on the opinions of Dr.

Merryman and Dr. Mahajan and wanted a determination on the issue of whether these opinions

reflecting inability to sustain work (that is, attend and concentrate or deal with stress) would be

the case absent substance abuse." (Tr. 833). Moreover, the ALJ acknowledged that the District

Court, in its prior decision, specifically disagreed with ALJ Padilla's reasons for discounting the

opinions of plaintiff's treating physicians. (Tr. 830). The ALJ stated:

> This case was remanded because the District Court disagreed with the prior
> Administrative Law Judge's arguments against treating sources – Dr. Merryman,
> a neurologist, and Dr. Mahajan, a psychiatrist. The Court said that those sources
> reflected 'an inability to attend and concentrate, as well as an inability to
> withstand stress' (the Court's quote). The prior residual functional capacity
> included restrictions to unskilled, simple tasks and low stress jobs with no
> production quotas or fast-paced work, with specific degree of severity findings on
> mental work categories, so presumably the Court accepted these medical opinions
> of disability but did not reverse and award benefits. The Court went on to opine
> that the issue on remand was whether the degree of limitation (reflected in the
> treating source opinions) would be the case if [plaintiff] was drug-free.

(*Id.*).

Nonetheless, despite the District Court's determination that the reasons provided by ALJ

Padilla for discounting the opinions of plaintiff's treating physicians as to her inability to attend

and concentrate and to withstand stress were erroneous (Tr. 859-860), ALJ McNichols

reevaluated the findings of Drs. Merryman and Mahajan. The ALJ found "[t]he same arguments

and analysis regarding mental impairment as in the prior decision . . . are still valid," and he

expressly incorporated those arguments by reference in his decision. (Tr. 831, citing Tr. 15-28,

539-555). By rejecting the treating physicians' opinions for the same reasons cited by ALJ

Padilla, ALJ McNichols simply repeated the errors that led to the remand by the District Court.

---

limit its discussion to plaintiff's mental impairments.

10

Specifically, like ALJ Padilla, ALJ McNichols improperly relied on a "non-treating source[] to rebut" the conclusions of plaintiff's treating physicians regarding plaintiff's inability to handle stress, concentrate, attend and keep pace. (Tr. 859). ALJ McNichols relied solely on the testimony provided by the nonexamining ME, Dr. Buban, at the April 2010 hearing to discount the conclusions of plaintiff's treating physicians. (Tr. 831-33). This was in error as the ME simply reassessed the evidence on which the District Court previously relied in finding that the ALJ erred by rejecting the treating physicians' conclusions.[5] Dr. Buban testified that she was relying on only one record from January of 2006, which Dr. Buban was "assuming" was a drug-free period, to demonstrate improvement in plaintiff's condition. (Tr. 1180). However, this record pre-dated ALJ Padilla's June 2007 decision which the District Court reversed. Dr. Buban testified that because plaintiff was not currently in treatment, it would be difficult to say from her review of the record that plaintiff's psychological condition had improved overall. (*Id.*). Because Dr. Buban simply reassessed the findings of plaintiff's treating physicians based on plaintiff's unchanged condition without citing any new and material evidence to support her opinions, ALJ McNichols was not entitled to rely on Dr. Buban's opinions to revisit and disregard the conclusions of Drs. Merryman and Mahajan. Thus, substantial evidence that would entitle ALJ McNichols to discount the treating physicians' conclusions was lacking.

In short, while the ALJ cites the reasons provided by ALJ Padilla as "valid reasons" for rejecting plaintiff's treating physicians' opinions (Tr. 831), the District Court previously determined that ALJ Padilla's reliance on non-treating sources to disregard Drs. Merryman and Mahajan's conclusions as to plaintiff's inability to concentrate, attend and handle stress was erroneous. (Tr. 859-60). ALJ McNichols simply repeated the error by relying on the same

---

[5] ALJ McNichols stated that there were no new opinions on the issue of plaintiff's disability that had been

11

reasons previously rejected by the District Court to disregard the treating physicians' opinions. The Commissioner fails to point to new evidence to show that the ALJ was entitled to disregard the treating physicians' opinions despite the District Court's previous determination. For these reasons, plaintiff's first assignment of error should be sustained.

### 2. The ALJ failed to properly analyze the effects of plaintiff's substance abuse on the question of disability.

Plaintiff further contends that substantial evidence does not support a finding that drug use is a contributing factor material to the disability determination. The Commissioner asserts that even if plaintiff were disabled, her drug abuse would be a contributing factor material to the disability determination.

The Social Security Act provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). The implementing regulations specify the sequential evaluation process the ALJ must follow when the issue of substance abuse presents itself. This process requires the ALJ to *first* determine whether a claimant suffers from a disability before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935.[6]

---

submitted since the prior decision. (Tr. 832).

[6] Title 20 C.F.R. §§ 404.1535, 416.935 sets forth the process for determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

The ALJ acknowledged that the District Court remanded this matter for a determination as to whether plaintiff's substance abuse was a contributing factor material to a finding of disability. (Tr. 830). As discussed in connection with plaintiff's first assignment of error, the ALJ then improperly reevaluated the treating physicians' assessments. The ALJ then proceeded to assess plaintiff's degree of mental limitation under the "B" criteria at Step Three of the sequential evaluation process. (Tr. 831-33). The ALJ found that plaintiff has no more than mild limitation in daily activities based on the prior two ALJ decisions, which the ALJ adopted as "still valid for the relevant periods" (Tr. 832, citing Tr. 15-28, 539-55); no more than mild limitation in social functioning; moderate limitation in concentration, persistence or pace; and one or two episodes of decompensation, which the ALJ attributed to plaintiff's substance abuse. (*Id.*). The ALJ stated that while the District Court "at least intimated" that plaintiff was disabled based on the opinions of plaintiff's treating physicians, the ME testified those opinions were not supported by the record. (Tr. 833). The ALJ then concluded:

> The Medical Expert testimony, as discussed above, clearly reflected that if there were any period when she could not have worked, substance abuse was the primary reason.

---

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

13

> Accordingly, even if the claimant were found to be disabled, substance abuse would be a contributing factor material to such finding.

(Tr. 833).

A review of the ALJ's decision shows that the ALJ did not conduct the proper analysis in support of his determination as to the impact of plaintiff's substance abuse on the disability determination. In fact, the ALJ's decision fails to even mention the controlling regulations, 20 C.F.R. §§ 404.1535, 416.935, that set out the procedure to follow. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (the ALJ's failure to cite the operative substance abuse regulation "anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there. The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard."). The ALJ improperly conflated the sequential analysis by discounting the effects of plaintiff's substance abuse issues *prior* to making a determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). Specifically, it appears the ALJ improperly deducted the assumed effects of plaintiff's substance abuse in assessing the degree of mental limitation by noting that Dr. Buban - whose findings the ALJ incorporated into the RFC - had assessed "one or two possible episodes of decompensation, *but these were related to substance abuse*." (Tr. 831, emphasis added). The ALJ elaborated on this point when deciding plaintiff's degree of mental impairment as follows: "There were one or two episodes of decompensation assessed by the Medical Expert, *but she said that these revolved around substance abuse*. There is no evidence that a minimal amount of stress would cause the claimant to decompensate. She can and seemingly does live independently." (Tr. 833) (emphasis added). The ALJ therefore appears to have improperly removed plaintiff's episodes of decompensation from consideration at Step Three because he

14

attributed them to plaintiff's substance abuse. Similarly, the ALJ improperly focused at Step

Three on substance abuse as an assumed cause of plaintiff's depression and any limitation in

concentration, persistence or pace by finding: "The claimant may have depression, but . . . [h]er

main problem was and may continue to be polysubstance abuse, with heroin the drug of choice."

(Tr. 832).

    In addition to failing to evaluate plaintiff's polysubstance abuse issues in accordance with

the Social Security regulations, ALJ McNichols did not cite substantial evidence to support his

determination on the impact of plaintiff's substance abuse on the disability determination.  The

ALJ states that the ME's testimony "clearly reflects" that if there were any period of time when

plaintiff could not work, then substance abuse was the reason.  (Tr. 833).  However, Dr. Buban's

testimony was far from clear on this point.  After Dr. Buban testified she would limit plaintiff to

low stress work, the ALJ asked if she had any thoughts as to "[h]ow the stress would have been

when [plaintiff] was actively using substances?" (Tr. 1176).  Dr. Buban replied, "Well, the

problem with linking it back to using substances it would be, you know, how much that impacted

her ability to carry out any task." (*Id*.).  Thus, Dr. Buban did not provide an answer to the

question of how plaintiff's drug abuse impacted her ability to handle stress.

    Further, after Dr. Buban opined that plaintiff would have moderate restrictions in

concentration, persistence or pace, the following exchange took place between the ALJ and Dr.

Buban:

> Q.  . . . The concentration as the moderate part of that, can you tell me, would
> that, from your review of the record be the case if she were using substances as
> opposed to not using substances?
> A.  Back to not using substances, and exact limitation would be - - And what I'm
> basing that on is the C31F, Non-Psychological Assessment.  The restriction is for
> sustained attention concentration.  So, I think that would be a limitation for fast
> paced production quota.

> Q. Okay.  Does it appear that her concentration has improved since she has been drug free?
> A. Well, without the benefit of recent treatment all I can rely [on is] her only neuropsychological assessment, which says she was making substantial improvement and the more recent 2007 treatment notes, which appear to indicate improvement in functioning.  Certainly not any severe problems with functioning.

(Tr. 1175-76).  Dr. Buban did not link any periods of improvement in plaintiff's mental functioning with periods during which plaintiff was "drug free."  In fact, Dr. Buban opined that she had difficulty ascertaining plaintiff's current usage (Tr. 1174) and did not believe that negative urine drug screens shed any light on whether plaintiff was actively using drugs.  (Tr. 1179).  Accordingly, the ALJ was not entitled to rely on Dr. Buban's testimony to determine what limitations would remain in the absence of plaintiff's polysubstance abuse.

Finally, the ALJ failed to fulfill his obligation under 20 C.F.R. §§ 404.1535, 416.935 to state what limitations would remain if substance abuse were factored out.  *See McKnight v. Astrue*, No. 1:11-cv-116, 2012 WL 71327, at *9, Report and Recommendation (S.D. Ohio Jan. 10, 2012) (Bowman, M.J.) (citing *Major v. Astrue*, No. 1:10-cv-530-HRW-SKB, 2011 WL 3566778 (S.D. Ohio June 30, 2011) (Report and Recommendation, quoting *Trent v. Astrue*, 2011 WL 841538, at *3 (N.D. Ohio March 8, 2011) ("if the ALJ . . . determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis . . . to determine if the claimant would still be disabled without the substance abuse.")).  Instead, the ALJ made only a general finding that if plaintiff were found to be disabled, substance abuse would be a contributing factor material to such finding.  (Tr. 833).  The Commissioner argues that the ALJ fulfilled his obligations under §§ 404.1535, 416.935 because Dr. Buban purportedly identified the limitations that would remain if plaintiff stopped using drugs ("only low stress work with no fast pace or production quotas and simple tasks") and the ALJ incorporated these

16

limitations into his RFC finding and identified jobs available to an individual with such limitations. (Doc. 15 at 9, citing Tr. 833, 1175-77). However, as discussed above, Dr. Buban's testimony was less than clear in identifying the limitations that would remain absent plaintiff's drug use. Moreover, Dr. Buban's testimony does not satisfy the ALJ's obligation to first make a disability determination without factoring out the impact of plaintiff's substance abuse before specifying those limitations that would remain absent plaintiff's drug use.

Thus, the ALJ erred in his evaluation of plaintiff's substance abuse issues in contravention of the Social Security regulations. The ALJ determined that plaintiff's polysubstance addiction disorder is a severe impairment. (Tr. 828). The ALJ then improperly evaluated plaintiff's substance abuse disorder in connection with Step Three of the sequential evaluation process - whether plaintiff has an impairment or combination of impairments that meet or equal a Listing – instead of making a disability determination without factoring out the assumed effects of her substance abuse. (Tr. 830-33).

In an analogous case within the Sixth Circuit, one district court explained the rationale for reversing and remanding based upon a similar error:

> To find that drug addiction is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse. . . . The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C).[7]

*Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004) (finding legal error where the ALJ improperly considered claimant's cocaine addiction as detracting from the credibility of her complaints of seizure activity and other symptoms). *See also Brueggemann*, 348 F.3d at 693-95;

---

[7] Section 423(d)(2)(C) is the analogous provision under the DIB provision of the Social Security Act relating to whether drug or alcohol abuse is a contributing factor material to the determination of disability.

*Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001). As the Eighth Circuit in

*Brueggemann* explained in analyzing cases involving drug or alcohol abuse:

> The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability.
> . . .
>
> If the gross total of a claimant's limitations, *including* the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.

348 F.3d at 694-95 (emphasis added). In other words:

> Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow. The alternative procedure adopted by the ALJ in this case remains inconsistent with the regulations binding on claimants, the ALJs, and this court. The ALJ's decision reflects legal error.

*Id.* at 695.

Because the ALJ failed to follow the controlling regulations, the Court is unable to

discern from the instant record the degree to which plaintiff's inability to concentrate and handle

the stress and pressure of daily work activity is adversely affected by her depressive symptoms,

as opposed to any substance abuse. The ALJ acknowledged that the record was not clear as to

plaintiff's continuing drug use (Tr. 832) and the ME also indicated that the record was unclear as

to the level of plaintiff's drug activity. (Tr. 831). The Court cannot conclude that any legal error

committed by the ALJ was harmless. For these reasons, plaintiff's second assignment of error should be sustained.

### 3. This matter should be reversed and remanded.

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176.

The District Court previously remanded this case for development of the record on the issue of whether drug abuse is a contributing factor material to the determination of plaintiff's disability. A review of the record discloses that despite the ALJ's attempt to further develop the record on this point on remand, the ALJ failed to comply with Social Security regulations by determining the limitations that would remain in the absence of plaintiff's substance abuse. Reversal of the ALJ's decision is therefore warranted. As to whether benefits should be immediately awarded, the Court notes that the current record does not adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *See Faucher*, 17 F.3d at 176. Plaintiff testified at the ALJ hearing that it had been several months to a year since she last used illegal drugs. (Tr. 1152, 1165). Plaintiff further testified that she had stopped treating with Dr.

19

Mahajan in 2006 or 2007 and no longer sees a psychiatrist. (Tr. 1154). Thus, it is not clear whether plaintiff would be disabled by her mental limitations absent her substance abuse. A sentence four remand under 42 U.S.C. § 405(g) for further development of the record on this particular issue is therefore appropriate. *See Faucher*, 17 F.3d at 174. On remand, the Commissioner and the ALJ should be directed to determine what mental limitations would remain in the absence of plaintiff's substance abuse. *Brueggemann*, 348 F.3d at 695.[8]

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for a determination of what limitations would remain in the absence of plaintiff's substance abuse.

Date: 1/23/2013

Karen L. Litkovitz
United States Magistrate Judge

---

[8] As the *Brueggemann* court noted, "[W]hen the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped. Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." 348 F.3d at 695.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOAN LYNCH,                                      Case No. 1:12-cv-075
     Plaintiff,                                 Dlott, J.
                                                    Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

21